1
2
3
4
5
6
7

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue
15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

**Attorneys for Plaintiff**
*- additional counsel on signature page –*

8
9

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| ALTIMEO ASSET MANAGEMENT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> QIHOO 360 TECHNOLOGY CO. LTD., HONGYI ZHOU, XIANGDONG QI and ERIC X CHEN, <br><br> Defendants | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

19
20
21
22
23
24
25
26
27
28

Plaintiff Altimeo Asset Management ("Altimeo" or "Plaintiff"), by and through its counsel, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of public statements issued by Qihoo 360 Technology Co. Ltd. ("Qihoo 360" or the "Company"), Qihoo 360's filings with the U.S. Securities and Exchange Commission ("SEC"), and other publicly available information.

## SUMMARY OF THE ACTION

1.      This securities class action is brought on behalf of all former owners of Qihoo 360 stock and American Depositary Shares ("ADSs") who: (a) sold shares, and were damaged thereby, during the period between January 11, 2016 and July 15, 2016, inclusive (the "Class Period"); and/or (b) held shares as of July 15, 2016.  Excluded from the Class are Defendants, members of the immediate family of Individual Defendants, any subsidiary or affiliate of Qihoo 360, and the directors and officers of Qihoo 360 and their families and affiliates at all relevant times, and anyone who filed a petition or pursued appraisal rights of their Qihoo 360 stock pursuant to Cayman Law.

2.      This case concerns a scheme by Qihoo 360 and certain of its officers and/or directors to depress the value of Qihoo 360's stock and ADS in order to avoid paying a fair price to Qihoo 360's shareholders during a transaction to take the Company private, in violation of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.  Defendants executed this scheme by failing to provide shareholders adequate disclosure of all material information related to the Merger, and making false assurances about the fair value of Qihoo 360's stock and ADS.  As a result, Qihoo 360 shareholders were misled into accepting consideration from the Merger that was well below fair value for their Qihoo 360 shares.

3.      Incorporated in 2005 under the laws of the Cayman Islands, Qihoo 360, formerly known as Qihoo Technology Company Limited, is purported to be the leading internet company in the People's Republic of China.

4.      On December 18, 2015, Qihoo 360 announced that it had entered into a definitive merger agreement[1] pursuant to which it would be acquired by a consortium of investors in an "all-cash

---

[1] The Merger agreement was entered between the Company and Tianjin Qixin Zhicheng Technology Co., Ltd., Tianjin Qixin Tongda Technology Co., Ltd., True Thrive Limited, or Midco, New Summit Limited, and solely for purposes of Section 6.19 of the Merger Agreement, Global Village Associates Limited, or Global Village, and Young Vision Group Limited, or Young Vision (collectively, the "Parent Parties"). The Parent Parties, the Founder Security holders and the equity investors named in

transaction valued at approximately $9.3 billion, including the redemption of approximately $1.6 billion of debt."  Pursuant to the terms of the merger agreement, "each of the Company's class A and class B ordinary shares issued and outstanding immediately prior to the effective time of the merger (the 'Shares') will be cancelled and cease to exist in exchange for the right to receive US$51.33 in cash without interest, and each American Depositary Share ('ADS') of the Company, every two ADSs representing three class A ordinary shares, will be cancelled in exchange for the right to receive US$77.00 in cash without interest," except for certain Shares (the "Proposed Transaction").   The Merger was authorized and approved by a shareholder vote on March 30, 2016 during an extraordinary general meeting and became effective on July 15, 2016.

5.      Prior to the shareholder vote, Defendants (as defined herein) issued a Preliminary Proxy Statement on January 11, 2016, an Amended Proxy Statement on February 8, 2016 ("Amendment No. 1"), a Second Amended Proxy Statement on February 26, 2016 ("Amendment No. 2"), a Third Amended Proxy Statement on March 3, 2016 ("Amendment No. 3") (collectively, the "Proxy") and a Final Amended Proxy Statement on July 15, 2016, all filed with the SEC in connection with the Merger.

6.      Between December 18, 2015 and July 15, 2016, in order to convince Qihoo 360 stockholders to vote in favor of the Merger, Defendants authorized the filing of materially false and misleading statements with the SEC, in violation of Sections 10(b) and 20(a) of the Exchange Act.  The Proxy statements and Annual Report contained materially incomplete and/or misleading disclosures.  Specifically, the Proxy and Annual Report are deficient and misleading as they fail to provide adequate disclosure of all material information related to the Merger.  The Proxy and Annual Report also failed to disclose Qihoo 360's upcoming plan to relist its shares in the People's Republic of China.

---

Exhibit B of the Merger Agreement, publicly filed with the SEC, are collectively referred to as the "Buyer Group."

7.     Contrary to the Company's repeated reassurances about no substantial changes to its structures or relisting following the Merger, shortly after the going-private deal was closed, media news outlets reported on the Company's relisting plans.  For example, the *Financial Times* reported on February 28, 2017, that materials used in fundraising "for the privitisation of Qihoo 360" also discussed the "return to the A Shares" market in China.  This article described the "return to investors" upon an "exit" (*i.e.*, a transaction allowing those taking Qihoo 360 private to "exit" their position through a relisting), stating that the return "may be as high as 5 [times]" the going-private price.

8.     This deal, operating as a "backdoor listing," would allow Qihoo 360 to return to the stock market by relisting on the Shanghai Stock Exchange at a multiple, to the detriment of shareholders who unknowingly sold Qihoo 360's stock and ADS at substantially deflated values during the Class Period as part of the scheme.  Formally announced on November 6, 2017, the deal involved Shanghai-listed elevator-maker SJEC agreeing to buy Qihoo 360 through an asset swap and cash injection.

9.     As a result of these material misrepresentations and omissions, Qihoo 360 shareholders were misled into accepting consideration from the Merger that was well below fair value for their Qihoo 360 shares.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

13.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

14.    Plaintiff is an independent portfolio management company based in France and approved by the French Financial Authority, with significant assets under management.  As set forth in the attached Certification and the Assignment appended thereto, a fund affiliated with Altimeo held Qihoo 360 securities as of July 15, 2016 and/or sold Qihoo 360's securities during the Class Period, and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Qihoo 360 is incorporated under the laws of the Cayman Islands, with its principal executive offices located at Building 2, 6 Haoyuan, Jiuxianqiao Road, Chaoyang District, Beijing, People's Republic of China, 100015.  Prior to the Merger, the Company's stock was listed on the NYSE under the ticker symbol "QIHU."

16.    Defendant Hongyi Zhou ("Zhou") is the co-founder of the Company and has served as its Chairman and Chief Executive Officer since August 2006.

17.    Defendant Xiangdong Qi ("Qi") is the co-founder of the Company and has served as a Director and its President since 2005.

18.    Defendant Eric X. Chen ("Chen") has served as a Director of the Company since January 2014.

19.    Defendants Zhou, Qi and Chen are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Qihoo 360's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press

releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20. Qihoo 360 and the Individual Defendants are collectively referred to herein as "Defendants."

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

21. On December 18, 2015, the Company issued a press release entitled "Qihoo 360 Enters into Definitive Agreement for Going Private Transaction," announcing the Proposed Transaction. The press release stated in relevant part:

BEIJING, Dec. 18, 2015 /PRNewswire/ -- Qihoo 360 Technology Co. Ltd. ("Qihoo 360" or the "Company") (NYSE: QIHU), a leading Internet company in China, today announced that it has entered into a definitive merger agreement pursuant to which the Company will be acquired by a consortium of investors in an all-cash transaction valued at approximately $9.3 billion, including the redemption of approximately $1.6 billion of debt.

Pursuant to the terms of the merger agreement, at the effective time of the merger, each of the Company's class A and class B ordinary shares issued and outstanding immediately prior to the effective time of the merger (the "Shares") will be cancelled and cease to exist in exchange for the right to receive US$51.33 in cash without interest, and each American Depositary Share ("ADS") of the Company, every two ADSs representing three class A ordinary shares, will be cancelled in exchange for the right to receive US$77.00 in cash without interest, except for (a) certain Shares (including Shares represented by ADSs) owned by entities controlled by Mr. Hongyi Zhou, chairman and chief executive officer of the Company, and Mr. Xiangdong Qi, director and president of the Company, and the Company treasury shares, which will be cancelled and cease to exist and no payment or distribution will be made with respect thereto, and (b) Shares held by shareholders who have validly exercised and not effectively withdrawn or lost their rights to dissent from the merger pursuant to Section 238 of the Companies Law of

the Cayman Islands (the "Dissenting Shares"), which will be cancelled and cease to exist in exchange for the right to receive the payment of fair value of the Dissenting Shares in accordance with Section 238 of the Companies Law of the Cayman Islands.

The merger consideration represents a premium of 16.6% to the closing price of the Company's ADSs on June 16, 2015, the last trading day prior to the Company's announcement of its receipt of a "going-private" proposal, and a premium of 32.7% to the average closing price of the Company's ADSs during the 30 trading days prior to its receipt of a "going-private" proposal.

The investor consortium includes, among others, Citic Guoan, Golden Brick Silk Road Capital, Sequoia Capital China, Taikang Life Insurance, Ping An Insurance, Sunshine Insurance, New China Capital, Huatai Ruilian, Huasheng Capital or their affiliated entities.

The consortium intends to fund the merger through a combination of cash contributions from the investors pursuant to equity commitment letters, and the proceeds from a committed term loan facility in an amount up to the RMB equivalent of US$3.0 billion and a bridge loan facility of up to the RMB equivalent of US$400 million, pursuant to certain debt commitment letters provided by China Merchants Bank Co., Ltd.

The Company's board of directors (the "Board"), acting upon the unanimous recommendation of a committee of independent and disinterested directors established by the Board (the "Special Committee"), approved the merger agreement and the merger and resolved to recommend that the Company's shareholders vote to authorize and approve the merger agreement and the merger. The Special Committee negotiated the terms of the merger agreement with the assistance of its financial and legal advisors.

22.     The Merger was authorized and approved by a shareholder vote on March 30, 2016 during an extraordinary general meeting and became effective on July 15, 2016.

### Materially False and Misleading Statements Issued During the Class Period

23.     On January 11, 2016, Qihoo 360 filed a Schedule 13E-3 containing a Preliminary Proxy Statement with the SEC in connection with the Merger, attached as Exhibit 99 to Form SC 13E-3.  The Preliminary Proxy Statement described the Company's plans following the Merger, indicating that the Company would continue its operations "as a privately held company," reinforcing that there were no current plans in relation to the Company's structure:

If the Merger is consummated, **the Company will continue its operations as a privately held company**, and, as the result of the Merger, the Company's American depositary shares ("ADSs"), two representing three Class A ordinary shares of the Company, will no

longer be listed on the New York Stock Exchange (the "NYSE") and the ADS program for the Shares will terminate.

***

The Company's ADSs, every two representing three Class A ordinary shares, are currently listed on the NYSE under the symbol "QIHU." It is expected that, following the consummation of the Merger, the Company will cease to be a publicly traded company and **will instead become a private company beneficially owned solely by the Buyer Group**. Following the consummation of the Merger, **ADSs will no longer be listed on any securities exchange or quotation system, including the NYSE,** and price quotations with respect to sales of ADSs in the public market will no longer be available. In addition, registration of Shares under the Exchange Act may be terminated upon the Company's application to the SEC if Shares are not listed on a national securities exchange and there are fewer than 300 record holders of Shares. Ninety days after the filing of Form 15 in connection with the consummation of the Merger or such shorter period as may be determined by the SEC, registration of the Shares under the Exchange Act will be terminated and the Company will no longer be required to file periodic reports with the SEC or otherwise be subject to the U.S. federal securities laws, including the Sarbanes-Oxley Act of 2002, applicable to public companies. Following the consummation of the Merger, the Company's shareholders will no longer enjoy the rights or protections that the U.S. federal securities laws provide, including reporting obligations for directors, officers and principal securities holders of the Company. Furthermore, following the consummation of the Merger, the ADS program for the Shares will terminate.

***

The Buyer Group has advised the Company that, except as set forth in this proxy statement, **the Buyer Group does not have any current plans, proposals or negotiations that relate to or would result in an extraordinary corporate transaction involving the Company's corporate structure**, business, or management, such as a merger, reorganization, liquidation, relocation of any material operations, or sale or transfer of a material amount of the Company's assets.

24.    The Preliminary Proxy Statement emphasized that to the Company's Board of Directors, as "a privately held entity, the Company's management may have greater flexibility to focus on improving the Company's long-term financial performance without the pressure created by the public equity market's emphasis on short-term period-to-period financial performance." It further added that "[t]he Buyer Group decided to undertake the going-private transaction at this time because it wants to take advantage of the benefits of the Company being a privately held company as described above and because the Buyer Group was able to obtain debt financing in connection with the Merger."

25.     On February 8, 2016, the Company filed Amendment No. 1 to the Preliminary Proxy Statement on Form SC 13-E 3/A with the SEC, where the Company reiterated that it would continue on as a "private company," following the Merger, stating in part:

> The Company's ADSs, every two representing three Class A ordinary shares, are currently listed on the NYSE under the symbol "QIHU." It is expected that, following the consummation of the Merger, the Company will cease to be a publicly traded company and will instead become a private company beneficially owned solely by the Buyer Group. Following the consummation of the Merger, **ADSs will no longer be listed on any securities exchange or quotation system, including the NYSE,** and price quotations with respect to sales of ADSs in the public market will no longer be available. In addition, registration of Shares under the Exchange Act may be terminated upon the Company's application to the SEC if Shares are not listed on a national securities exchange and there are fewer than 300 record holders of Shares. Ninety days after the filing of Form 15 in connection with the consummation of the Merger or such shorter period as may be determined by the SEC, registration of the Shares under the Exchange Act will be terminated and the Company will no longer be required to file periodic reports with the SEC or otherwise be subject to the U.S. federal securities laws, including the Sarbanes-Oxley Act of 2002, applicable to public companies. Following the consummation of the Merger, the Company's shareholders will no longer enjoy the rights or protections that the U.S. federal securities laws provide, including reporting obligations for directors, officers and principal securities holders of the Company. Furthermore, following the consummation of the Merger, the ADS program for the Shares will terminate.
>
> ***
>
> The Buyer Group has advised the Company that, except as set forth in this proxy statement, the Buyer Group **does not have any current plans, proposals or negotiations that relate to or would result in an extraordinary corporate transaction involving the Company's corporate structure,** business, or management, such as a merger, reorganization, liquidation, relocation of any material operations, or sale or transfer of a material amount of the Company's assets.

26.     On February 26, 2016, the Company filed Amendment No. 2 to the Preliminary Proxy Statement on Form SC 13-E 3/A with the SEC, which again reiterated that it would continue on as a "private company," following the Merger, stating in relevant part:

> The Company's ADSs, every two representing three Class A ordinary shares, are currently listed on the NYSE under the symbol "QIHU." It is expected that, following the consummation of the Merger, the Company will cease to be a publicly traded company and will instead become a private company beneficially owned solely by the Buyer Group. Following the consummation of the Merger, **ADSs will no longer be listed on any securities exchange or quotation system, including the NYSE, and price quotations with respect to sales of ADSs in the public market will no longer be available.** In addition, registration of Shares under the Exchange Act may be terminated

upon the Company's application to the SEC if Shares are not listed on a national securities exchange and there are fewer than 300 record holders of Shares. Ninety days after the filing of Form 15 in connection with the consummation of the Merger or such shorter period as may be determined by the SEC, registration of the Shares under the Exchange Act will be terminated and the Company will no longer be required to file periodic reports with the SEC or otherwise be subject to the U.S. federal securities laws, including the Sarbanes-Oxley Act of 2002, applicable to public companies. Following the consummation of the Merger, the Company's shareholders will no longer enjoy the rights or protections that the U.S. federal securities laws provide, including reporting obligations for directors, officers and principal securities holders of the Company. Furthermore, following the consummation of the Merger, the ADS program for the Shares will terminate.

\*\*\*

The Buyer Group has advised the Company that, except as set forth in this proxy statement, the Buyer Group **does not have any current plans, proposals or negotiations that relate to or would result in an extraordinary corporate transaction involving the Company's corporate structure**, business, or management, such as a merger, reorganization, liquidation, relocation of any material operations, or sale or transfer of a material amount of the Company's assets.

27. On March 3, 2016, the Company filed Amendment No. 3 to the Preliminary Proxy Statement on Form SC 13-E 3/A with the SEC, which again reiterated that it would continue on as a "private company," following the Merger, stating in relevant part:

The Company's ADSs, every two representing three Class A ordinary shares, are currently listed on the NYSE under the symbol "QIHU." It is expected that, following the consummation of the Merger, the Company will cease to be a publicly traded company and will instead become a private company beneficially owned solely by the Buyer Group. Following the consummation of the Merger, ADSs will no longer be listed on any securities exchange or quotation system, including the NYSE, and price quotations with respect to sales of ADSs in the public market will no longer be available.

\*\*\*

The Buyer Group has advised the Company that, except as set forth in this proxy statement, **the Buyer Group does not have any current plans, proposals or negotiations that relate to or would result in an extraordinary corporate transaction involving the Company's corporate structure**, business, or management, such as a merger, reorganization, liquidation, relocation of any material operations, or sale or transfer of a material amount of the Company's assets.

28. On April 28, 2016, Qihoo 360 filed an Annual Report on Form 20-F with the SEC, announcing financial results for the quarter and year ended December 31, 2015, in which the Company

again reiterated that it would continue on as a "private company," following the Merger, stating in relevant part:

> On December 18, 2015, we entered into the Merger Agreement with Tianjin Qixin Zhicheng Technology Co., Ltd., a limited liability company incorporated under the laws of the PRC, Tianjin Qixin Tongda Technology Co., Ltd., a limited liability company incorporated under the laws of the PRC, Midco, Merger Sub, and solely for purposes of Section 6.19 of the Merger Agreement, Global Village and Young Vision. Pursuant to the terms of the Merger Agreement, at the effective time of the merger, each of our class A and class B ordinary shares issued and outstanding immediately prior to the effective time of the merger will be cancelled and cease to exist in exchange for the right to receive $51.33 in cash without interest, and each our ADS will be cancelled in exchange for the right to receive $77.00 in cash without interest, except for (i) certain shares owned by entities controlled by Mr. Hongyi Zhou and Mr. Xiangdong Qi, and our treasury shares, which will be cancelled and cease to exist and no payment or distribution will be made with respect thereto, and (ii) the Dissenting Shares, which will be cancelled and cease to exist in exchange for the right to receive the payment of fair value of the Dissenting Shares in accordance with Section 238 of the Companies Law of the Cayman Islands. At the effective time of the merger, Merger Sub will merge with and into our company, with our company continuing as the surviving corporation and a wholly-owned subsidiary of Midco. The Merger Agreement, the plan of merger required to be filed with the Registrar of Companies of the Cayman Island, or the Plan of Merger, and the transactions contemplated by the Merger Agreement and the Plan of Merger, including the Merger, have been approved by the shareholders at an extraordinary general meeting of shareholders held on March 30, 2016. Completion of the Merger is subject to the satisfaction or waiver of the conditions set forth in the Merger Agreement. We will work with various other parties to the Merger Agreement towards satisfying all other conditions precedent to the Merger set forth in the Merger Agreement and complete the Merger as quickly as possible. If and when completed, **the Merger would result in us becoming a private company and our ADSs would no longer be listed or traded on any stock exchange, including the NYSE, and our ADS program would be terminated.**

29.   On July 15, 2016, the Company filed Amendment No. 4 to the Preliminary Proxy Statement on Form SC 13-E 3/A with the SEC, to report the results of the Merger, stating in relevant part:

> As a result of the Merger, the **ADSs will no longer be listed on any securities exchange or quotation system, including the New York Stock Exchange ("NYSE"), and the Company will cease to be a publicly traded company.** The Company has requested NYSE to file an application on Form 25 with the SEC to remove the ADSs from listing on NYSE and withdraw registration of the ordinary shares under the Exchange Act. The deregistration will become effective in 90 days after the filing of Form 25 or such shorter period as may be determined by the SEC. In addition, the Company will suspend its reporting obligations under the Exchange Act by filing a certification and notice on Form

15 with the SEC. The Company's reporting obligations under the Exchange Act will be suspended immediately as of the filing date of the Form 15 and will terminate once the deregistration becomes effective.

30.    The statements contained in ¶¶ 23-29 were materially false and/or misleading when made because Defendants failed to disclose:  (i) that the Company's Proxy materials and Annual Report misrepresented and/or omitted material information that was necessary for Company shareholders to make an informed decision concerning whether to vote in favor of the Merger; (ii) that contrary to the representations in the Proxy and the Annual Report, the Company already had plans to relist its shares in China prior to closing the Merger and its delisting from the NYSE; and (iii) as a result, the Company's statements about its business, operations, and prospects lacked a reasonable basis.

31.    Contrary to the Company's repeated reassurances about no substantial changes to its structures or relisting following the Merger, shortly after the going-private deal was closed, media news outlets reported on the Company's relisting plans.  For example, the *Financial Times* reported on February 28, 2017, that materials used in fundraising "for the privitisation of Qihoo 360" also discussed the "return to the A Shares" market in China.  This article described the "return to investors" upon an "exit" (*i.e.*, a transaction allowing those taking Qihoo 360 private to "exit" their position through a relisting), stating that the return "may be as high as 5 [times]" the going-private price.

32.    The proposed relisting was later confirmed on November 6, 2017, when Shanghai-listed elevator-maker SJEC agreed to buy Qihoo 360 through an asset swap and cash injection.

**ADDITIONAL SCIENTER ALLEGATIONS**

33.    During the Class Period, as alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to

the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

34.    The Defendants permitted Qihoo 360 to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially affected the value of the Company's stock and ADS.

35.    As set forth herein, Defendants, by virtue of their receipt of information reflecting the true facts regarding Qihoo 360, their control over, receipt, and/or modification of Qihoo 360's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Qihoo 360, participated in the fraudulent scheme alleged herein.

36.    The Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on sellers of Qihoo 360 stock and ADS by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding Qihoo 360's business, operations, and management and the intrinsic value of Qihoo 360 stock and ADS and caused Plaintiff and members of the Class to sell Qihoo 360 stock and ADS at artificially deflated prices.

## LOSS CAUSATION/ECONOMIC LOSS

37.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially deflated the price of Qihoo 360's stock and ADS and operated a fraud or deceit on Class members by failing to disclose and misrepresenting the facts detailed herein.  This course of conduct misled the Class members and caused them, in reliance on the misrepresentations and on the market price of Qihoo 360's stock and ADS during the Class Period, to sell their shares at a depressed price.  As a result of their sale of Qihoo 360 stock and ADS during the

Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

38.     Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact, which there was a duty to disclose.

39.     Plaintiff is also entitled to rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's stock traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Qihoo 360 stock and ADS between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

40.     At all relevant times, the markets for Qihoo 360 stock and ADS were efficient for the following reasons, among others:

(a)     as a regulated issuer, Qihoo 360 filed periodic public reports with the SEC;

(b)     Qihoo 360 regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)     Qihoo 360 was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)     Qihoo 360 stock and ADS were actively traded in an efficient market, namely the NYSE, under the ticker symbol "QIHU."

41.     As a result of the foregoing, the market for Qihoo 360 stock and ADS promptly digested current information regarding Qihoo 360 from publicly available sources and reflected such information in Qihoo 360's stock price.  Under these circumstances, all sellers of Qihoo 360 stock and ADS during the Class Period suffered similar injury through their sale of Qihoo 360 stock and ADS at artificially deflated prices and the presumption of reliance applies.

## **NO SAFE HARBOR**

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Qihoo 360 who knew that the statement was false when made.

15

## CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all former owners of Qihoo 360 stock and ADS as of July 15, 2016 and/or sold shares, and were damaged thereby, during the period between January 11, 2016 and July 15, 2016, inclusive (the "Class").  Excluded from the Class are Defendants, members of the immediate family of Individual Defendants, any subsidiary or affiliate of Qihoo 360, and the directors and officers of Qihoo 360 and their families and affiliates at all relevant times, and anyone who filed a petition or pursued appraisal rights of their Qihoo 360 stock pursuant to Cayman Law.

44.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

45.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether the Exchange Act was violated by Defendants;

(b)    Whether Defendants omitted and/or misrepresented material facts;

(c)    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)    Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e)    Whether the price of Qihoo 360 stock and ADS was artificially deflated; and

(f)    The extent of damage sustained by Class members and the appropriate measure of damages.

16

46.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

47.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class action litigation.  Plaintiff has no interests that conflict with those of the Class.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

49.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

    (a)     Employed devices, schemes, and artifices to defraud;

    (b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their sale of Qihoo 360 stock and ADS during the Class Period.

17

52.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they sold Qihoo 360 stock and ADS at artificially deflated prices. Plaintiff and the Class would not have sold Qihoo 360 stock and ADS at the prices they did, or at all, if they had been aware that the market prices had been artificially and falsely deflated by Defendants' misleading statements.

53.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their sale of Qihoo 360 stock and ADS during the Class Period.

<u>**COUNT II**</u>

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

54.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of Qihoo 360 within the meaning of Section 20(a) of the Exchange Act. By virtue of their positions and their power to control public statements about Qihoo 360, the Individual Defendants had the power and ability to control the actions of Qihoo 360 and its employees. By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23;

B.     Awarding Plaintiff and the members of the Class damages and interest;

C.     Awarding Plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March  5,  2019

Respectfully submitted,

**POMERANTZ LLP**

By: _s/ Jennifer Pafiti_
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

_**Attorneys for Plaintiff**_

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.    I, _Bernard DELATTRE_                , on behalf of Altimeo Asset

Management ("Altimeo"), with authority to enter into litigation on behalf of Altimeo, make this declaration

pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the

Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform

Act of 1995.

2.    I have reviewed a Complaint against Qihoo 360 Technology Co. Ltd. ("Qihoo" or the

"Company") and authorize the filing of a motion on Altimeo's behalf for appointment as lead plaintiff.

3.    Altimeo did not purchase or acquire Qihoo securities at the direction of plaintiffs' counsel or

in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    Altimeo is willing to serve as a representative party on behalf of a Class of investors who

purchased or acquired Qihoo securities during the Class Period as specified in the Complaint, including

providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select

the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of Altimeo's transactions in

Qihoo securities during the Class Period.

6.    During the three-year period preceding the date on which this Certification is signed, Altimeo

has served or sought to serve as a representative party, and/or filed a complaint on behalf of a class under the

federal securities laws in the following action:

* *Fasano et al. v. Li et al.*, 1:16-cv-08759 (S.D.N.Y.)

7.    Altimeo agrees not to accept any payment for serving as a representative party on behalf of the

class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

Executed ____2aB/02/06____
            **(Date)**


_____

**(Signature)**

____Bernard DELATTRE____

**(Print Name)**

____President____

**(Title)**

**Qihoo 360 Technology Co. Ltd. (QIHU)**                    **Altimeo Asset Management ("Altimeo")**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|----------------------:|---------------------:|
| Account 1 | | | |
| 9/10/2015 | Purchase | 9,500 | $44.3178 |
| 9/11/2015 | Purchase | 6,000 | $42.3485 |
| 9/14/2015 | Purchase | 1,500 | $41.7663 |
| 9/18/2015 | Purchase | 8,052 | $45.2083 |
| 9/22/2015 | Purchase | 5,000 | $46.5239 |
| 9/28/2015 | Purchase | 10,500 | $46.4503 |
| 9/29/2015 | Purchase | 10,500 | $45.2476 |
| 10/9/2015 | Purchase | 12,000 | $52.5289 |
| 10/13/2015 | Purchase | 1,500 | $52.0593 |
| 10/14/2015 | Purchase | 9,300 | $51.3618 |
| 10/21/2015 | Purchase | 2,000 | $53.9308 |
| 10/22/2015 | Purchase | 6,000 | $53.1701 |
| 10/28/2015 | Purchase | 1,000 | $53.6765 |
| 11/10/2015 | Purchase | 3,000 | $58.7440 |
| 11/13/2015 | Purchase | 3,000 | $62.4190 |
| 11/25/2015 | Purchase | 1,500 | $66.0500 |
| 11/27/2015 | Purchase | 2,000 | $65.2914 |
| 12/18/2015 | Purchase | 17,501 | $72.9991 |
| 12/22/2015 | Purchase | 10,000 | $72.8044 |
| 12/23/2015 | Purchase | 14,500 | $72.6520 |
| 12/28/2015 | Purchase | 160 | $72.6400 |
| 1/4/2016 | Purchase | 1,400 | $71.9100 |
| 2/2/2016 | Purchase | 1,000 | $70.6200 |
| 2/3/2016 | Purchase | 4,000 | $70.3380 |
| 2/8/2016 | Purchase | 4,000 | $69.0236 |
| 2/25/2016 | Purchase | 1,500 | $71.0500 |
| 4/19/2016 | Purchase | 5,000 | $75.4900 |
| 4/22/2016 | Purchase | 2,000 | $75.4674 |
| 5/3/2016 | Purchase | 3,000 | $75.7400 |
| 5/5/2016 | Purchase | 9,100 | $74.5277 |
| 10/16/2015 | Sale | 7,500 | $55.2409 |
| 10/28/2015 | Sale | 15,000 | $57.9556 |
| 11/2/2015 | Sale | 10,500 | $60.0527 |
| 11/4/2015 | Sale | 7,500 | $61.4541 |
| 11/12/2015 | Sale | 22,500 | $63.4594 |
| 11/19/2015 | Sale | 6,000 | $65.5516 |
| 11/23/2015 | Sale | 7,500 | $66.4675 |
| 11/25/2015 | Sale | 6,000 | $67.3620 |
| 11/30/2015 | Sale | 3,000 | $68.4510 |
| 12/1/2015 | Sale | 1,500 | $69.8633 |
| 12/2/2015 | Sale | 4,500 | $71.0004 |
| 5/5/2016 | Sale | 1,100 | $74.9955 |
| 5/24/2016 | Sale | 16,000 | $73.7407 |
| 5/25/2016 | Sale | 6,000 | $73.9383 |
| 6/16/2016 | Sale | 50,913 | $73.0911 |

**Qihoo 360 Technology Co. Ltd. (QIHU)**          **Altimeo Asset Management ("Altimeo")**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| **Account 2** | | | |
| 1/5/2016 | Purchase | 4,500 | $72.2100 |
| 1/6/2016 | Purchase | 1,500 | $72.0600 |
| 1/7/2016 | Purchase | 9,600 | $71.1301 |
| 1/8/2016 | Purchase | 7,500 | $70.3413 |
| 1/11/2016 | Purchase | 1,000 | $69.7900 |
| 6/16/2016 | Purchase | 43,000 | $73.1088 |
| 7/12/2016 | Sale | 5,400 | $73.5207 |
| 7/13/2016 | Sale | 200 | $73.5500 |